# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Case No. 1:18-cv-01933-DDD-STV

AMY L. WESTBY,

    Plaintiff,

v.

BKD CPAS & ADVISORS, LLP,

    Defendant.

## ORDER ON MOTION TO DISMISS

Before beginning work with Defendant BKD CPAS & Advisors, LLP, Plaintiff Amy Westby discovered an offensive Facebook post maintained by a future co-worker. Westby exchanged emails with BKD management for several weeks about the post, and BKD eventually revoked Westby's job offer, stating that her personal approach and communication style was inconsistent with BKD's expectations. In this action, Westby alleges that BKD illegally retaliated against her opposition to discriminatory employment practices in violation of Title VII and the analogous Colorado Anti-Discrimination Act. It is before the Court on BKD's motion to dismiss for failure to state a claim. (Motion, Doc. 46.) Magistrate Judge Scott T. Varholak recommended that the Motion be granted in part and denied in part. (Recommendation, Doc. 53.) Plaintiff filed timely objections and BKD responded.

(Objection, Doc. 55; Response, Doc. 56.) For the following reasons, the Court **ADOPTS** the Recommendation in full and **OVERRULES** the Objection.

I. BACKGROUND

The following allegations are drawn from the Amended Complaint (Doc. 41) and are taken as true. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

On November 1, 2016, Plaintiff Amy Westby accepted an audit associate position with Defendant BKD, a national accounting firm, and was scheduled to begin work at BKD's Denver office on September 20, 2017. (Am. Compl. ¶ 4.) Westby is a half-Asian, half-Caucasian female. (*Id*.) In August 2017, Westby learned that she had been assigned to work with a training "buddy," Raena Conklin, for her first six months of employment. (*Id*. ¶¶ 29–30.)

On August 10, 2017, Westby looked up Conklin's Facebook page. (*Id*. ¶ 33.) On it, she found a post containing an image, drawn by Conklin, apparently depicting Conklin's friend as a stick figure of an Asian woman with slanted eyes, making the "V" sign with both hands. (Id. ¶¶ 33-34.) Accompanying text read, "I <3 you long time." (*Id*. ¶ 34.) According to Westby, "[t]his statement is offensive, because of the belief that Asians do not speak proper English; also, because it has negative, sexual connotations." (*Id*.) Conklin identified herself as a BKD employee on Facebook. (*Id*.)

Fearing that more serious discriminatory issues might develop, Westby emailed BKD Human Resources Manager Laura Sollie, expressing her concerns

2

about the offensive public post and being assigned to work and train with someone who maintained it. (*Id.* ¶¶ 30, 35.) On August 11, Westby and Sollie spoke over the phone. Westby reiterated these concerns and asked to be assigned to a new buddy. Sollie was "hostile towards [Westby] over the phone and told her that she was being 'defensive.'" (*Id.* ¶ 37.) The two spoke again on August 15, with Sollie telling Westby that a new buddy had been assigned because it was the "easiest thing to do." (*Id.* ¶ 38.) But Westby remained concerned about the situation. Although she did not expect BKD to make Conklin remove the post, she "feared that if the issue were not properly addressed, it could lead to her having less opportunities at BKD and a hostile work environment." After their phone call, Westby sent Sollie a follow-up email to this effect. (*Id.* ¶ 39.) On August 16, Sollie called back and left a voicemail, but Westby did not return the call. (*Id.* ¶ 40.) On August 21, Westby sent Sollie another email, in which she asked if she had been reassigned to a different team. She was now worried about retaliation because of Sollie's earlier hostility, the delay in response time, and because she believed the problem was not fully resolved. (*Id.* ¶ 41.)

On August 25, Westby received an email from Rebecca Curry, BKD's Employee Relations and Compliance Manager and Equal Employment Opportunity (EEO) Coordinator based out of the company's Missouri headquarters. Curry stated that BKD had conducted an investigation, was happy that Westby had been assigned to a new buddy, and that they considered the matter closed. Curry did not directly respond to many questions Westby had recently asked in her email,

3

including whether she would be reassigned to a new team, be required to work with Conklin, or if the issue had been appropriately addressed. Rather, Curry stated that there would be "no changes to [Westby's] work assignments or the opportunities [she would] be provided in [her] new role" and instructed Westby to view the company's Anti-Harassment Policy attached to the email. (*Id.* ¶ 43.) Westby responded saying she was happy to have a new buddy and that she would contact Curry with any additional questions. (*Id.* ¶ 44.)

But Westby continued to be concerned. She believed the matter had been escalated to BKD's headquarters but closed with no additional attention. (*Id.*) So again on August 25, she sent a second email to Curry asking for clarity on the issues she had raised with Sollie but which had been left unaddressed. She inquired whether BKD employees were permitted to maintain discriminatory or racist public posts, whether the company had determined Conklin's actions to be discriminatory, and again whether she had been assigned to a different team. She noted that the post remained online. (*Id.* ¶ 45.)

Curry responded on August 28, referring Westby to the company's anti-discrimination policy and repeating the same information contained in her earlier email. (*Id.* ¶ 46.) But Westby still felt her questions were left unanswered. That day, she emailed Curry a third time asking if there was anyone else she could speak to about the situation. She feared that Curry was implying that Westby herself had violated the policy and that BKD had decided Conklin's post was not discriminatory and had decided to retaliate against her. (*Id.* ¶ 47.) Curry's August 29 response

4

made Westby fear for her job. Curry stated, "It is unfortunate that you interpreted my communication with you to indicate your violation of BKD policy. Let me assure you that is not correct." For a third time, Curry iterated that an investigation was conducted (but had to remain confidential), the matter was closed, and that Westby's work assignments and opportunities had not changed. She closed the email by stating:

> Our employment offer to you still stands and we look forward to you joining our firm and growing your career. If you conclude you do not wish to join our firm, we ask that you let us know at your earliest convenience. We invest significant resources to help ensure a successful start for all of our new hires, and need to make appropriate arrangements in the event you choose not to join BKD.

At this, Westby's concern grew. She believed Curry to be retaliating against her by putting her offer at risk. (*Id.* ¶ 48.)

On August 30, Westby responded to Curry, voicing her belief that BKD may be violating her Title VII rights but wanting to resolve the matter informally. She said it was "absurd to assume that she wanted to decline her job offer over this issue of discrimination." She expressed a desire to work for BKD, but felt that the company was pushing her to decline the offer. Finally, she made clear she would exercise her Title VII rights if the discrimination and harassment issues persisted. (*Id.* ¶ 49.)

On September 1, Curry called and emailed Westby, leaving messages asking her to call back to discuss the issue. (*Id.* ¶ 50.) On September 2, Westby responded by email stating she was not comfortable speaking on the phone. Not realizing

5

Curry held that title, Westby also asked to speak with BKD's EEO Coordinator. (*Id.* ¶ 51.) On September 5, Curry called and emailed again. She "demanded" to speak to Westby over the phone to go over what she believed to be a misunderstanding. To Westby, Curry was harassing her. Curry then scheduled a Skype meeting for September 6 with herself, Westby, and Julie Cummings—BKD's Chief Human Resources Manager. (*Id.* ¶ 52.) An hour later, Westby emailed back stating she was not comfortable speaking over the phone and she would like to "seek other options" to resolve the matter because she was "highly concerned that the issues would have a major negative effect of [her] future work opportunities." (*Id.* ¶ 53.) Later that day, Westby sent another email detailing why she thought the company was violating her rights under Title VII and offered to speak with Curry and Cummings on September 7. (*Id.* ¶ 55.)

On September 6, Curry cancelled the Skype meeting, and BKD's Chief Risk Officer Mike Wolfe sent Westby an email revoking her job offer. (*Id.* ¶¶ 56–57.) Among other things, the revocation stated:

> The way you have communicated with the company in this process reflects a communication style and personal approach inconsistent with how we work at BKD. Your emails reflect that you jumped to conclusions about others' intentions[.] . . . We are not taking this action because of your report about the Facebook post. We are taking this action because your conduct . . . caused us to conclude that you will not be able to perform the duties of Audit Associate in a manner consistent with our expectations for that position.

6

(*Id.* ¶ 108.) According to Westby, this reasoning was a pretext for an action taken as a means to retaliate against her for "filing the informal discrimination complaint and for seeking further clarification on the matter." (*Id.* ¶ 57.)

On October 5, Westby filed an official complaint with the EEOC against BKD for discrimination and retaliation in violation of Title VII of the Civil Rights Act. (*Id.* ¶ 58.) On May 1, 2018, the EEOC sent Westby a right to sue letter. (*Id.* ¶ 60.) On July 30, 2018, proceeding pro se, she filed a civil action in this Court. (*Id.* ¶ 61.) The operative Amended Complaint—which alleges the same circumstances, only with more detail and repetition, as did the original Complaint—asserts claims for (1) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), and (2) retaliatory discrimination in violation of the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402 (1)(a) and (1)(e)(IV) (CADA). (*See id.* ¶¶ 62–138.)[1] BKD moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Magistrate Judge Varholak recommended that the Motion be granted in part and denied in part, finding that Westby had failed to state a claim under either the opposition or participation clauses of 42 U.S.C. § 2000e-3(a). The Recommendation concluded that the deficiencies in the Amended Complaint—which carried over from the original

---

[1] In the Amended Complaint, Westby withdrew her Title VII and CADA discrimination and retaliation charges against then-individual defendants Conklin, Sollie, Curry, and Wolfe. She also withdrew her Title VII discrimination claim against BKD and "corrected" her Title VII retaliation claim by adding more than forty additional paragraphs to it that included legal citation and argument and allegations duplicate to those contained in her general "Factual Allegations" section. She also added a CADA retaliation claim. (*Compare generally* Am. Compl. *with* Compl., Doc. 1-1; *see also* Mot. to Amend, Doc. 29.)

7

Complaint—could not be fixed, making dismissal with prejudice appropriate. Finally, the magistrate judge recommended that the Court decline to exercise supplemental jurisdiction over the CADA claim. (Recommendation at 9–16.)

Westby's specific objections to the Recommendation contend that the magistrate judge misleadingly represented her allegations, applied an inappropriately high legal standard, erroneously concluded that she did not engage in protected activity, improperly proposed that her claims be dismissed with prejudice, and imprudently suggested that the Court decline supplemental jurisdiction over the CADA claim. (Objection at 4–6.)

## II. ANALYSIS

The Court reviews timely, specific objections to a magistrate judge's recommendation *de novo*. Fed. R. Civ. P. 72(b)(3).

### A. The Recommendation's Representation of Westby's Allegations

Westby acknowledges that "the Magistrate Judge did a thorough job of outlining and summarizing many of the facts of this case as [she] described in her Amended Complaint," but she argues that others were not completely accurate, taken out of context, or incomplete such that the Court should permit her to supplement them by "submitting evidence." (Objection at 6–17.)

The Court has carefully reviewed the seventy-page Amended Complaint—together with the magistrate judge's thorough summary of its allegations—and does not view the Recommendation's factual recitation to be materially lacking or misleading. In deciding motions to dismiss, it is neither necessary nor appropriate

8

for a court to supply a restatement of allegations verbatim from the operative pleadings, which often fail to be "short and plain" and regularly burst with assertions having no bearing on whether "the pleader is entitled to relief." *Cf.* Fed. R. Civ. P. 8(a). Not every difference or omission is legally material. Such is the case here. In this order, the Court will not labor over every slight alteration the Objection denounces.

**B. Legal Standards**

Westby argues that the Recommendation applied an inappropriately high pleading standard and made improper inferences in favor of BKD. (Objection at 17–22.) At issue are general pleading principles, special considerations pertinent to pro se plaintiffs, and requirements specific to retaliation claims.

Generally, dismissal is appropriate if a complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). At the pleading stage, all allegations of material fact in support of the claims must be accepted as true. *Wilson*, 715 F.3d at 850. To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "While the 12(b)(6) standard does not require that [a p]laintiff establish a prima facie case in

9

her complaint, the elements of each alleged cause of action help to determine whether [she] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Therefore, in evaluating the pleader's burden, courts must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Courts, however, must hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Because Westby is pro se, the Court therefore reads the Amended Complaint broadly for facts that could be sufficient to state a valid claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). Meaning "that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Id*. This "broad reading of the plaintiff's complaint," however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding [an] alleged injury." *Id*.

Finally, cases of alleged employment discrimination without direct evidence are evaluated under the three-step burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that test, a plaintiff must first establish a prima facie case. That done, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action.

10

If it does so, the burden shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext. *Khalik*, 671 F.3d at 1192. In the Objection, Westby cites heavily to *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015). There, the Second Circuit elaborated that, while a plaintiff will ultimately be required to prove that the employer-defendant acted with discriminatory motivation, "the requirements of a prima facie case for a plaintiff alleging employment discrimination change as the case progresses. . . . [I]n the first phase of the case, the prima facie requirements are relaxed." *Id.* at 307. Westby correctly states that this "relaxed" requirement results in a "temporary presumption" in her favor, meaning "she need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Id.* at 310–11. However, as the Second and Tenth Circuits agree, a plaintiff's temporary relief from her ultimate burden to show discrimination does not allay her duty to plausibly allege at "least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 311; *see also Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981) (explaining that the burden of ultimate persuasion does not arise until step three but a proper prima facie case is one which "raises an inference of discrimination"); *Khalik*, 671 F.3d at 1193 ("As we stated earlier, while Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims.").

So, giving a reasonably broad reading to the Amended Complaint for sufficient facts, the Court turns to whether Westby has plausibly alleged minimal support sufficient to raise an inference of discrimination by BKD.

**C. Westby's Failure to State a Claim**

Title VII prohibits retaliatory discrimination. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case, a plaintiff "must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *Vaughn v. Villa*, 537 F.3d 1147, 1150–51 (10th Cir. 2008) (quoting *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123–24 (10th Cir. 2007)). "Protected activities fall into two distinct categories: participation or opposition." *Id.* Under the opposition clause, an employer may not retaliate against a hiree "because [the hiree] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a); *Vaughn*, 537 F.3d at 1151. Under the participation clause, an employer may not retaliate against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *Vaughn*, 537 F.3d at 1151. Westby asserts violations of both the participation and opposition clauses. But the Recommendation found her failing to plausibly allege either. (Am Compl. at First Claim; Recommendation at 9–14.)

### i.   Participation Clause

Taking the participation clause first, Westby has failed to state a claim. The "participation clause applies only when an employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x 691, 702–03 (10th Cir. 2017) (quoting 42 U.S.C. § 2000e-3(a)). The plaintiff in *Poff* alleged that she was terminated in August 2013 but did not contact the EEOC until January 2014. But because her claim with the EEOC followed her termination, the district court recognized the factual impossibility that the employer could have retaliated in response to her participation in the proceeding. The Tenth Circuit found no error. *Id.* at 702–03. "[T]he participation clause only encompasses participation in formal EEOC proceedings; it does not include participation in an internal employer investigation unrelated to a formal EEOC charge." *Id.* (quoting *Littlejohn*, 795 F.3d at 316); *see also E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (same); *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 211 F. App'x 373, 376 (6th Cir. 2006) (same), *rev'd on other grounds*, 555 U.S. 271 (2009).

Here too, Westby did not engage the EEOC until after her termination. Even though, as noted in the Objection, the Supreme Court has not expressly decided whether the existence of a pending EEOC proceeding is necessary to a participation clause claim, *see Crawford v. Metropolitan Govt. of Nashville and Davidson Cnty.*, 555 U.S. 271 (2009), the circuits agree that it is. And here, Westby's pre-job

13

revocation interactions with Sollie and Curry were pursuant to an internal process and not related to formal EEOC proceedings. Curry's status as the company's EEO coordinator is not relevant. Neither is Westby's stated intent to file an EEOC charge in the future. Without a pending EEOC proceeding at the time of an adverse employment action, Title VII does not proscribe retaliation under the participation clause, and Westby's claim thus fails.

> i. **Opposition Clause**

Westby has also failed to state a claim under the opposition clause. The Amended Complaint alleges discrimination arising from BKD's failure to punish or otherwise address the racist posts of one of its employees. There is no suggestion that this conduct was regular or pervasive, and it is only viewable as an isolated incident. Even if Conklin's post was discriminatory, it was promulgated by a single employee, at a single time, and outside of the workplace. The Court cannot impute Conklin's extracurricular prejudice to the company itself as actionable discrimination. *See Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 112–13 (10th Cir. 2010) (quoting *Zokari v. Gates,* 561 F.3d 1076, 1081 (10th Cir. 2009) ("The employer must know not only that the employee has opposed an action *of the employer* . . . , but that the opposition was based on a belief that *the employer's action* constituted discrimination prohibited by Title VII." (emphasis as quoted)) and *Jordan v. Alternative Res. Corp.*, 467 F.3d 378, 380 (4th Cir. 2006) ("A complaint of a single racist remark by a colleague, without more, is not opposition protected by Title VII.")).

As Westby points out, even if no actionable discrimination took place, she can still meet the first element of her prima facie case by showing that she had a reasonable good-faith belief, when she complained to BKD, that she was engaging in protected opposition to discrimination. *See Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 700–01 (10th Cir. 2014) (citing *Crumpacker v. State of Kan., Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003)). As did the Recommendation, the Court assumes that Westby subjectively believed herself to be opposing a discriminatory practice. However, this belief was not reasonable. Westby is correct that, in some circumstances, an isolated incident may be so "extremely serious" that it alone can meet this standard. (*See* Objection at 34 (quoting *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009); *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015)). But rather than supporting Westby's case, they reveal why, even if her allegations were proven true, it does not meet the legal requirements to state a claim under Title VII.

In *Go Daddy*, the Muslim plaintiff successfully proved reasonable opposition after complaining about comments by his supervisor such as "[t]he Muslims need to die. The bastard Muslims need to die." *Go Daddy Software, Inc.*, 581 F.3d at 964. In *Daniels*, the Third Circuit refused to rest a finding of discrimination on certain isolated incidents, but found cumulative acts of age discrimination "throughout the school year" sufficient. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015). The differences between focused, threatening, and continuing actions and the circumstances here are stark. As the Supreme Court was careful to

comment, Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Offensive, inappropriate, or uncivil as Conklin's post may have been, complaining about a single post by a prospective coworker left online at some unspecified time and not directed at any individual was not equivalent to opposing a discriminatory practice by BKD. As the allegations show, BKD was attentive to Westby's repeatedly voiced concerns, attempted to address each of her questions, and accommodated her request to change buddies. The company treated this matter seriously, even if not in the exact manner she hoped. Title VII does not require more, and Westby has failed to state a claim.

**D. Dismissal with Prejudice**

Based on the foregoing, and noting similar deficiencies with Westby's original Complaint, the magistrate judge recommended dismissal with prejudice. (Recommendation at 14.) Generally, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the district court may dismiss without permitting amendment when it would be futile to give leave. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

Westby argues that her lack of legal acumen as a pro se plaintiff, the Amended Complaint's general disorganization, and her desire to include "additional facts . . . supported by evidence" in a new complaint weigh in favor of permitting amendment. (Objection at 40–42.) She explains that the Recommendation did not "consider[] 'unknown' facts that [Westby] can only establish through discovery . . . such as whether [she] has a 'reasonable' belief; whether she 'reasonably'

16

complained; whether [BKD] 'reasonably' resolved the issue; and[] questions regarding the intent of the Defendant and its agents." (Objection at 16–17.)

These, though, are not facts that could be discovered and proven, but conclusions to be drawn from the facts. And as explained above, the facts Westby alleges, even if proven true, do not support the legal conclusions necessary to state a claim. A Rule 12(b)(6) motion such as that at issue here tests the legal sufficiency of the pleadings, and the Court does not have cause to consider extraneous materials not contained therein. Because Westby is pro se, she needs not describe every fact in specific detail, and a "plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to [her], should be allowed to amend [her] complaint." *Hall*, 935 F.2d at 1110. But here, the failure is not Westby's lack of legal training, failure to include a particular element of a claim, or the Amended Complaint's lack of organization. The failure is the pleading's lack of plausible, nonconclusory allegations that would support a finding of illegal discrimination by BKD or, at least, would make it reasonable for Westby to believe herself to be opposing the same. Throughout this case, Westby's filings have been factually detailed. The Objection—which further supplied the text of several emails she believes demonstrate BKD's actionable conduct—was no less so. (*See* Objection at 29–31.) As she elaborates upon the same allegations she has already supplied, however, she is not missing the factual mark by any narrow margin. She is simply describing a scenario that does not meet the legal definition of retaliation under Title VII. No amount of further reorganization, factual explication,

documentary support, or legal briefing will transform facts that fail to state a claim into ones that do. Dismissal with prejudice is appropriate.

### E. CADA Claim

As the Recommendation correctly stated, a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3); *see also Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (concluding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over a plaintiff's remaining state-law negligence claims and stating that "we have repeatedly recognized that this is the preferred practice"). Westby requests that "[i]f the [Recommendation] is rejected or modified, the District Court should also allow the CADA claim to proceed. . . . The Court should also rule on whether the Plaintiff exhausted her administrative remedies when bringing her CADA claim." (Objection at 39.) Because the Court does not reject the Recommendation, this request is inapplicable. So, consistent with the preferred practice of district courts in the Tenth Circuit, the Court does not exercise supplemental jurisdiction over the CADA cause of action and does not reach whether Westby has stated a claim with respect thereto. *See Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).

## III. CONCLUSION

Based on the foregoing, the Recommendation (Doc. 53) is **ADOPTED** in full and Westby's Objection (Doc. 55) is **OVERRULED**. BKD's Motion (Doc. 46) is **GRANTED IN PART** and **DENIED IN PART**. Westby's Title VII retaliation claim is **DISMISSED WITH PREJUDICE**, and the Clerk shall enter judgment in favor of BKD accordingly. Westby's CADA claim is **DIMISSED WITHOUT PREJUDICE** to her right to bring such a claim in an appropriate court with jurisdiction.

Dated: June 24, 2019.

BY THE COURT:

*/s/ Daniel D. Domenico*
Daniel D. Domenico
United States District Judge